## Jones v. Commonwealth.

June 20, 1947.

J. B. Johnson, Judge.

G. W. Stephens for appellant.

Eldon S. Dummit, Attorney General, and J. L. Hughett, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Rich Jones, was convicted in the McCreary circuit court at the trial of an indictment accusing him of hog stealing, the jury fixing his punishment at one year's confinement in the penitentiary.

After his motion for a new trial was overruled he prosecuted this appeal, relying chiefly for a reversal on grounds (4) and (5) as incorporated in his motion for a new trial; but no reference whatever is made in counsel's brief to grounds (1), (2) and (3) incorporated therein. Ground (1) is, in substance, the same as ground (4). Grounds (2) and (3) complain of erroneous rulings of the court in rejecting evidence offered by appellant and in admitting evidence offered by the Commonwealth to which appellant objected and excepted. However, we find no support in the record for either of those grounds and this opinion will be confined to a consideration of grounds (4) and (5).

The first one of those two is "because the court erred in failing to instruct the jury properly," while ground (5) complains of the error of the court in overruling defendant's motion for a peremptory acquittal. They will now be disposed of in the order named.

The only complaint in brief of counsel in support of ground (4) is rested on the fact that the indictment—as is permitted by section 127 of the Criminal Code of Practice—first charged appellant with stealing four shoats, the property of Tom Jones, each weighing about

100 pounds, and of a total value of $40, and in a second count it charged that he *received* the same property from another who had stolen the hogs from Tom Jones, the owner, and with knowledge that they were stolen by the unknown thief.

The court gave to the jury four instructions, the first of which appropriately submitted to the jury the issue of whether or not appellant had stolen the hogs; whilst the second one submitted in appropriate language the issue as to whether or not he had received the hogs from some one who had stolen them knowing that they had been stolen. The third instruction was the usual reasonable doubt one, and the fourth defined "wilfully" and "feloniously." The only reference to this alleged error by counsel in his brief is, "There should be a third instruction telling the jury to say in their verdict on which count or charge they found their verdict of guilty." Counsel then states his reason why such additional instructions should have been given, which is, because the verdict of conviction does not point out upon which count the jury found the defendant guilty, and its verdict could not be a bar to a future prosecution of either of the crimes charged in the two counts.

It would no doubt have conformed to perfect practice if the court had given the instruction insisted upon; but in its absence the verdict of the jury, as rendered, would constitute a bar to a future prosecution for either of the offenses charged, since the logical effect of the verdict is to find defendant not guilty of the crime charged in the count upon which it did not base its verdict. Therefore, if a future indictment should be returned accusing defendant of the offense upon which it did not base its verdict, thereby acquitting him of that charge, a plea of former acquittal would be a complete defense. Such being the logical result of the effect of the jury's verdict, it follows that this ground is without merit.

Ground (5) calls for a brief, but substantial statement of the testimony given at the trial. There is nothing in the record to show that Tom Jones, whose hogs were alleged to have been stolen, and the defendant, Rich Jones, are in any way related. They each resided in a more or less rugged part of McCreary County, their homes being about four miles apart. Tom Jones appears

to have permitted his hogs to run at large, keeping them tamed by occasionally feeding them with corn. Among the number were four shoats, three of them being jet black and the other black and white spotted. Some time in January, 1946, the described shoats, each of which was marked according to the one adopted by their owner, disappeared followed by an investigation and searches by the owner, as well as extensive circulation of his loss throughout the section of the county in which he lived.

After the expiration of about five weeks he was notified by Will Smith, a witness for the Commonwealth, that while he, the witness, who was engaged in checking the crop acreages of the farmers who participated in the Federal AAA program, was at the residence of appellant he discovered one or more shoats, fitting the description of the one given him by Tom Jones, within a field on the side of a mountain either owned or rented (the evidence not disclosing) by appellant and he saw appellant feeding the shoats in that field. He communicated his discovery to the owner, who in company with Shelby Gregory, a farmer neighbor, went to the home of Rich Jones and they found the lost hogs in the same field described by Smith. The two made a "slip-gap" through which the missing hogs were released from the field and tolled back to the home of their owner. Every one—and there were several—who saw the four missing hogs described them exactly as did the owner, some of whom had known the hogs before they were missing. They also testified that the marks found on the hogs when discovered in appellant's field had been eliminated as far as possible and new markings had been made on their ears which alterations had not completely healed. However, appellant testified that such new marking was not the one that he had adopted and was using.

The witness, Shelby Gregory, also testified that some time during the period from the time the hogs were missing by the owner to the time they were discovered in appellant's field, appellant was at his home and ate the evening meal with him and his family, during which time the subject of the scarcity of meat, and its high price, was discussed. During that conversation appellant proposed and agreed to sell the witness a shoat which the latter agreed to buy. Witness did not imme-

diately call to get the shoat and on the following Sunday appellant came to his home and told him that Tom Jones came to his place claiming the hogs, and "he took them out of his (appellant's) field and claimed he (appellant) had changed the marks on them."

The witness, Smith, also testified that when he was at appellant's home, as hereinbefore stated, he (appellant) was feeding the hogs, some or perhaps all of which were not then within the field, and that appellant stated that he was doing so in order to "haunt" them so that they would not stray away, it being explained that the word "haunt" meant the taming of the hogs.

Defendant in his testimony was asked whether or not he stole the hogs, to which he answered, "If I stole them I don't know it." To say the least of it, his answer was not a direct and unqualified one. He also testified that the hogs found in his field belonged to his son, Cecil, but that he felt like he ought to have an interest in them because of having fed and assisted in raising them. Defendant never at any time sought to regain the hogs after their owner took them away, either for himself or for his son, Cecil. There are a number of other items of testimony usually found in cases of this character, given by witnesses for one side or the other having a more or less bearing upon the factual issue involved, but to refer to and discuss each of them would protract the length of this opinion beyond due grounds.

The reputation of the witness, Will Smith, was attacked by defendant, but it was defended by an equal or greater number of witnesses introduced by the Commonwealth. The reputation of defendant as being bad for morality and uprightness was proven by some six or eight of his neighbors and acquaintances, including his brother, who said, "It's always been bad, the way people talk about him."

What counsel, as well as defendant, considers as the latter's chief defense is that he and a number of others testified that the fence around the field from which the hogs were released and within which they were confined, was down in several places, thus affording the entry of hogs, and other animals running at large to enter the field and by reason thereof the fact that the hogs of Tom Jones were found in the field is

not conclusive evidence that defendant put them therein with the intention of appropriating them to his own use. It is true that witnesses to a greater number testified to the impaired condition of the fence around appellant's field than the number who testified to the contrary, but it is a universal rule of practice—long approved and applied by this court—that the jury are not compelled to believe one set of witnesses as against another, although a greater number may have testified against what the jury finds to be the truth. That proposition is so well known to the profession as that it needs the citation of no supporting case. Moreover, the undisputed fact of recent alteration in the marking of the missing hogs, though not conforming to appellant's adopted marking, followed by the hogs being fed by appellant are facts pointing toward but not conclusive of defendant's guilt.

A much more conclusive fact of defendant's guilt other than the hogs being confined to his field, is the fact testified to by the witness, Shelby Gregory, with reference to his agreeing to sell witness one of the hogs, but before it was obtained under that agreement defendant informed him that he could not comply with the terms of the sale because Tom Jones had come there and claimed them and took them away.

It is true that defendant denied a part of the testimony of Gregory, but he did admit being at the latter's home and that the scarcity of meat, as well as its high price, was discussed. He also admitted his agreement to sell the witness a hog, but that he never came after it, and that the one he did agree to sell belonged to his son and not to himself, which perhaps was the best, if not the only way, that appellant could escape the effect of the testimony of that witness. In testifying about the sale of a hog to Gregory, appellant was asked and answered: "Q. And you told Shelby Gregory Tom had come and got them? A. I told him he had come and got them and accused me of having them marked, that's right." That answer quite conclusively indicates that the reason why appellant did not complete the sale of the hog to Gregory was because Tom Jones had taken from his possession the one that he had agreed to sell him.

The testimony, as so substantially related, we con-

clude, was sufficient to authorize a submission of defendant's guilt to the jury, and likewise sufficient to sustain its verdict finding him guilty, and the court properly overruled appellant's motion for a directed acquittal.

Wherefore, for the reasons stated, the judgment is affirmed.