**Roy Lee WHISMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**COMMONWEALTH of Kentucky, Cross-Appellant,**

v.

**Roy Lee WHISMAN, Cross-Appellee.**

Court of Appeals of Kentucky.

Feb. 10, 1984.

Douglas Miller, Swinford & Sims, Cynthiana, for appellant and cross-appellee.

David L. Armstrong, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee and cross-appellant.

Before DUNN, HOWARD and McDONALD, JJ.

McDONALD, Judge.

The facts leading to appellant's conviction began with an anonymous phone call tip to the police. The anonymous male tipster called the Maysville Police Department on September 10, 1982, at about 3:09 a.m. He related that someone in a white Camaro had pointed a gun at him at Forest Street, and the vehicle had then pulled into the parking lot of the Save Mart store.

Two officers were dispatched to the Save Mart store. Upon arrival they noticed a 1968 white Camaro parked with two occupants inside. The car began to leave and the officers, in separate patrol cars, turned on their blue lights and corralled the Camaro, one patrol car in the front and one in the back. The occupants were ordered out.

Ricky Graham, a codefendant and the driver, got out within a reasonable time but Roy Lee Whisman, the owner and passenger in the car, did not get out promptly. He was observed fumbling around as if to hide something in the glove compartment.

After finally getting out of the car, Whisman became argumentative and belligerent with the officers. When one of the officers walked past Whisman's car, he noticed two pills on the front seat. He reached in, the door being left open, and picked the pills up. He then observed more pills on the floor of the car on the passenger side. The officer opened the glove compartment and found inside a nine-millimeter loaded pistol and four different prescription-type bottles with labels torn off. When Whisman was asked about the pills, he responded that they were his medication. (It was observed that he had an amputated leg.)

The police testified that they never considered obtaining a search warrant for the automobile. It is evident from reading the record that the officers were too concerned with the circumstances at hand and were afraid of the possibility of being shot because of the report they had received about a gun. The record further shows that the entry into the car and its glove compartment were made prior to any arrest and prior to advising the appellant of his constitutional rights.

It was proven at the trial that the pills obtained from the car were:

a) three Percodan tablets (Schedule II narcotic);

b) seventeen Tuinals tablets (Schedule II non-narcotic);

c) twelve Valium tablets (Schedule IV non-narcotic);

d) 136 Talwin tablets (Schedule III non-narcotic).

Codefendant Graham was arrested at the scene for being intoxicated. Drugs were found on his person. Whisman related to the police that he had been drunk for four hours and had just awakened when the police stopped them. An employee of the Save Mart testified that codefendant Graham had tried to sell some drugs to him as he paid for some gasoline. On appellant's leaving the store's parking lot, the police arrived at the scene.

In his own defense, Whisman testified that he needed the drugs for pain related to the amputation of his leg. A physician testified, backing him up; however, the doctor admitted that he would not have prescribed so many drugs if he had known Whisman was getting other prescriptions filled through other doctors. Codefendant Graham was not tried because he failed to appear. The jury found Whisman guilty of Count 1 of the indictment, trafficking in a controlled substance—Percodan. They fixed his punishment at seven years to serve in the penitentiary; however, they left blank on the verdict form the other two counts considered in the instructions. The jury's failure to reach a verdict on the two counts is the basis for the Commonwealth's cross-appeal.

## APPELLANT'S FIRST POINT OF ERROR IS THAT THE MOTION TO SUPPRESS ALL EVIDENCE SEIZED UPON APPELLANT'S ARREST SHOULD HAVE BEEN SUSTAINED BY THE TRIAL COURT.

First we must resolve the issue of whether the police had probable cause to stop the Whisman vehicle being driven by Ricky Graham. Appellant cites *Waugh v. Commonwealth*, Ky.App., 605 S.W.2d 43 (1980), where the tipster stated that a crime (selling drugs) would take place in a shopping mall. The police knew Waugh because of previous arrests. They were informed that he would be at a certain location in one hour. The police stationed themselves at various locations and observed Waugh make a phone call from a store. When he finished, he began to walk toward the police but then immediately turned to walk in an opposite direction upon seeing the police approaching him. The police stopped Waugh and conducted an involuntary search which produced two morphine tablets. The *Waugh* case relied primarily upon *Aguilar v. Texas*, 378 U.S. 108, 84

S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, *Aguilar* has been overruled by the recent decision in *Illinois v. Gates*, — U.S. —, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Illinois v. Gates* holds that under *Aguilar v. Texas* and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the rigid two-pronged test for determining whether an informant's tip establishes probable cause for issuance of a warrant is abandoned and the totality of circumstances approach is substituted in its place.

■ Although we do not have a search warrant situation in this instance, we feel the same rationale would be used for determining probable cause in a warrantless search. Surely if a judge may use the totality of circumstances approach to find probable cause in a search warrant, the police should be able to use the same approach in warrantless searches. In *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the United States Supreme Court stated that "the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment." 401 U.S. at 566, 91 S.Ct. at 1035, 28 L.Ed.2d at 312. We do not interpret "at least as stringent," however, to mean that the standards for a warrantless search are substantially different or more stringent than those for a magistrate's assessment, and we hold that the totality of circumstances approach of *Illinois v. Gates* is applicable to the search conducted in the present case.

*Illinois v. Gates* held that the two-pronged test of reliability (revealing the informant's basis of knowledge) and the test of veracity (facts sufficient to establish the informant's truthfulness or the reliability of his report) is too rigid. The rigid test must give way to a practical, common-sense decision in consideration of all the circumstances confronting the magistrate in the issuance of a search warrant. We think this would be the same type of test

that would confront a police officer under the circumstances as shown in the case before us. The opinion in *Illinois v. Gates* also tells us that probable cause is a practical and nontechnical conception, that it deals, as its name implies, with probabilities, and that factual and practical considerations of everyday life are being dealt with on which reasonable and prudent men, not legal tacticians, must act. Further, it states that the concept of probable cause cannot be reduced to a neat set of legal rules, considering that informants' tips come in many shapes and sizes and from many different persons.

■ Upon examination of this case, we know that a tip was reported about a crime (flourishing a pistol), and a dangerous situation was related. The tip gave the location and the description of a vehicle and its occupants. After dispatch to the scene the police began to discover exactly what the tip said would be found. This is a perfect example of exigent circumstances. There was no vehicle impoundment, no inventory search, and no rummaging through the car's interior. Therefore, *Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979), is not applicable. The conduct of the police, when viewed step by step, reveals no abuse of appellant's constitutional rights. The police knew there was a weapon somewhere, and after seeing the drugs on the seat and floor of the car, then dealing with an aggressive and belligerent subject, we cannot expect the police to stop what they were doing and spend hours trying to get a search warrant at three o'clock in the morning. Naturally, if a quantum leap is taken from the fact of an anonymous tip to the warrantless search of the glove compartment of the car, it could be concluded there was an abuse by a search without probable cause. However, considering probable cause as explained in *Illinois v. Gates*, and examining the totality of the circumstances step by step, a reasonable basis can be seen for the actions of the police officers and, in our view, good faith conduct on their part. We see no error in

the trial court's refusal to suppress the evidence in this case.

## SECONDLY, APPELLANT COMPLAINS THAT THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS FOR DIRECTED VERDICT.

■ The evidence supported the jury verdict. The case was fully presented with the defense proof of justification and excuse but the jury was not persuaded by it. We believe the trial court would have erred if a directed verdict had been granted in favor of the appellant. The evidence disclosed: a) a large amount of drugs, an amount inconsistent with personal need; b) a codefendant trying to sell some of the drugs to a third party immediately prior to the arrest; c) appellant's suspicious actions when stopped by the police, along with the presence of prescription bottles with labels torn off, and d) appellant's own physician's not knowing that the appellant was obtaining drugs from other doctors. The jury's verdict is based on substantial evidence. We see no error on this point.

## THIRDLY, APPELLANT ASSERTS THAT THE TRIAL COURT ERRED IN NOT GRANTING A NEW TRIAL ON THE GROUND THAT A MEMBER OF THE JURY FAILED TO ANSWER QUESTIONS BY THE APPELLANT ON THE VOIR DIRE WHICH WOULD HAVE REVEALED BIAS.

■ Appellant's counsel asked prospective jurors if they had any relatives or close friends who were police officers. Juror Coleman Hay did not respond. Later, it was learned that Mr. Hay had a son who was killed while a police officer. The appellant insists that we construe Mr. Hay's failure to reveal such a fact as a hidden bias in favor of the prosecution. We have no latitude to give such a construction. The juror was under no duty to make such a revelation about his son since he was not asked. His answers were all truthful in response to the questions propounded. We cannot suspect a violation of the juror's oath based on a question and answer not asked or answered. Bias or prejudice of a juror is not presumed; actually, the converse is true unless there is some basis to the contrary in the record. There was no error here.

## LASTLY, APPELLANT ASSERTS THAT DUE TO THE PREJUDICIAL, INFLAMMATORY AND IMPROPER REMARKS BY THE PROSECUTOR AT TRIAL THE COURT ERRED IN REFUSING TO GRANT APPELLANT A NEW TRIAL, THEREBY VIOLATING HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

■ The basis for this point of error is that in cross-examination of Dr. Rye, appellant's physician, the prosecutor asked, "Suppose you knew Roy Lee Whisman was the biggest drug dealer in Fleming County, would it do any good to ...?" Objection was sustained, but a request for mistrial was overruled. To this point we have no error because the court promptly admonished the Commonwealth's Attorney not to ask such a question again. We feel the matter was cured.

■ Then, in closing argument, the prosecutor made remarks about drug dealers in the community and the abuse of drugs by children. While these remarks give a first-blush impression of being improper because there is no factual basis for them in the record, we cannot give any in-depth consideration because they were not objected to, so they were not preserved for appellate review.

Therefore, the conviction of Roy Lee Whisman and the judgment entered pursuant to it is affirmed.

## CROSS–APPEAL

■ The Commonwealth appeals and asserts error on the trial court when it refused to grant a trial date on counts 2 and 3 of the indictment which were incorporated in the instructions but were left blank by the jury on the verdict form. The trial court ruled in its judgment that the failure of the

trial jury to reach a verdict by leaving the form blank constituted an acquittal. We agree.

Here the trial judge accepted the verdict without objections. There were no orders from the bench for the jury to return and find the appellant either guilty or not guilty on each of the other counts instructed on. It is impossible to determine what the jury's intent was. Were they confused? Did they mean to acquit? Did they mean to find guilt? Regardless, we are of the persuasion that if a new trial were ordered the appellant would be subject to being tried twice for the same offense, and therefore, the Commonwealth would be in violation of the double jeopardy clause of the federal and state Constitutions. *See Jones v. Commonwealth*, 305 Ky. 264, 203 S.W.2d 72 (1947).

The judgment is affirmed on cross-appeal.

All concur.