534 A.2d 362

John HEROD

v.

**STATE of Maryland.**

**No. 47, Sept. Term, 1987.**

Court of Appeals of Maryland.

Dec. 10, 1987.

Melissa M. Moore, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

The issues here are whether the police violated the fourth amendment by a warrantless stop of petitioner's van and search of its passenger compartment. We conclude that there was no violation because, as explained below, the police acted on probable cause so that the "automobile exception" to the warrant requirement applies.

Petitioner, John Herod (Herod), was tried on an agreed statement of facts in the Circuit Court for Baltimore City and convicted of possession of cocaine with intent to distribute and of possession of a handgun. He was sentenced as a

recidivist to ten years without parole for the cocaine violation and to a concurrent term of three years for the handgun violation. In an unreported opinion the Court of Special Appeals affirmed each conviction. Certiorari was granted to review whether

> the Court of Special Appeals err[ed] in holding that the search and seizure of [Herod] and the vehicle he was driving was not in violation of the Fourth Amendment.

The record of the suppression hearing before Judge Kenneth L. Johnson is the record for our review. *See Trusty v. State,* 308 Md. 658, 670–72, 521 A.2d 749, 754–56 (1987).

The case against Herod was made by the investigation of two uniformed police officers in the Western District of Baltimore City, John Fabula (Fabula) and Richard Phillips (Phillips). Their investigation utilized information from two anonymous informants and from a drug possession arrestee.

The events giving rise to the investigation date from August 1984 when Fabula, while on radio car patrol, was dispatched to investigate a report of drug dealing which the police had received by telephone from an anonymous person. The informant had stated that drugs were being sold by the operator of a green Ford van with Maryland registration RL 2630 which was then parked in front of 1560 North Woodyear Street. Fabula went to the 1500 block of N. Woodyear where he observed the described vehicle parked in front of 1560 but the van was unoccupied and there was no evidence of drug sales.[1]

During the first week of March 1985 Fabula again obtained information about drug dealing in the 1500 block of N. Woodyear. He was approached face to face by the informant. She was a drug user who showed Fabula her scars from injections. Her information related to an indi-

---

1. The green Ford van, RL 2630, was not registered to Herod until November 19, 1984. Fabula testified that he checked the vehicle's registration in August 1984 but that he could not recall the registered owner at that time.

vidual nicknamed "Crip." She had personally purchased drugs from Crip in the past and had come to the police because Crip was getting her sister hooked on drugs. She would not give the police her name because she feared retaliation.

The informant described Crip as a black male in his 50's with whitening grey hair, approximately five feet seven inches, 135 pounds. She related that Crip was a drug runner who sold heroin and cocaine and that Crip's routine was to leave 1560 N. Woodyear between 4:00 and 6:00 a.m. with large quantities of heroin and cocaine. She also said that, in order to protect his drug supply, he would be armed with a handgun which she described as similar to that carried by Fabula, a .38 revolver with a four inch barrel.

Fabula enlisted the assistance of Phillips who had returned to uniformed patrol duty at his request after a number of years of service with drug enforcement units of the Baltimore City Police. Phillips had never previously encountered the female informant. Upon receiving the informant's information the three traveled in Fabula's patrol car to the 1500 block of N. Woodyear. The informant lay down in the backseat of the car to minimize her risk of being seen with the police. Once in that block the informant identified a green Ford van with Maryland tags RL 2630 as a vehicle belonging to Crip. It was the same vehicle which Fabula had been informed in August 1984 was connected with drug trafficking in that block.

Fabula checked Maryland tag RL 2630 with the Motor Vehicle Administration and determined that the vehicle was registered to a John Herod of 3819 Victoria Avenue, Baltimore.

Thereafter Fabula and Phillips, both of whom were then working the midnight to 8:00 a.m. shift, attempted to keep the 1500 block of N. Woodyear under surveillance to the extent that they were able to do so when not occupied with other duties. Woodyear Street is an "alley street" running roughly north and south parallel to and between Calhoun

St. to the west and Carey St. to the east. The northern end of the 1500 block of Woodyear is Baker Street and the southern end is Gold Street. Automobile traffic on Woodyear is one way southbound. To make their respective observations the officers would position themselves on Gold or Baker Streets. Although one or the other of the officers would from time to time see the green van parked in the 1500 block, they never saw anyone enter or leave it, and it was not until March 14, when Herod was arrested, that one of them saw someone driving the van.

Under cross-examination Phillips testified:

Q. You were unable to at least with regard to the young lady ... to corroborate anything she told you physically?

A. Other than the van left between four and six. Several times we were involved in calls ... between 3 and 6 o'clock in the morning.... When we had come back or I had come back to do a spot check or spot surveillance, the van was gone. That was all after 6 o'clock in the morning.

Q. Six o'clock in the morning the van was gone?

A. Everytime I checked, it would be gone.

In the early morning hours of March 7 Phillips and Fabula were parked in marked vehicles at either end of the 1500 block of Woodyear. The same van was parked in front of 1560 and they observed "a lot of traffic in and out of that location." At about 2:40 a.m. Phillips observed a man, later identified as Vernon Green (Green), leaving 1560 N. Woodyear.[2] Phillips approached Green for a field interview.[3] When approached Green discarded something which Phillips retrieved. It appeared to be cocaine and Green was

---

**2.** The transcript of Fabula's testimony records him as having said this address was 1516. The record of Phillips's testimony on this point is 1560. House numbers in the 1500 block N. Woodyear St. begin at a low of 1529 and extend to 1562. *See* Mayor and City Council of Baltimore, *Real Estate Tax Assessments,* at 758 (1983).

**3.** Phillips described a field interview as a brief inquiry about a person's name, address and date of birth, at the location where the individual is stopped.

arrested for controlled dangerous substance possession.[4] This occurred in the 700 block of Gold Street, around the corner from the 1500 block of Woodyear. Standing there, after he had been cautioned, Green said that he had purchased the drugs from Crip whom he described as a short, black male in his 50's whose first name was John. Green pointed to a green van parked in the immediate area and said it was Crip's. The vehicle pointed to was the same green Ford van bearing Maryland tags RL 2630.

The officers took Green to the Western District station where he gave an oral statement in which he said that he had previously purchased drugs from Crip when Crip was selling from 1504 Vine Street.

Phillips caused police records to be searched which confirmed that the John Herod who was the registered owner of the van used the alias, "Crip," that he had a previous address of 1504 Vine Street and that he had an extensive criminal record. His contacts with the criminal justice system included "numerous penalties in the past for violations of narcotics laws in Maryland and in Washington, D.C." The most recent arrest was in 1982. His record also included weapons violations and some other crimes. The printout under Phillips's computer clearance number of this information is dated March 13, 1985, at 12:04 a.m.

At about 1:15 a.m. on March 14 Fabula arrested one Donald Bennett at Gold and Calhoun Streets. Fabula had observed Bennett in the 1500 block of Woodyear Street. For reasons which do not explicitly appear in the record, Bennett, while being observed by Fabula, was inspired to discard a plastic bag containing numerous gelatin capsules which Fabula believed contained cocaine.

At about 4:35 a.m. that same morning, as Fabula was driving westbound on Gold Street at Woodyear, he observed

---

**4.** Phillips also testified that it is not uncommon for drug possessors in West Baltimore to discard drugs when approached for a "field interview," whereas drug possessors in East Baltimore, when similarly approached, frequently hold onto the drugs and run.

the green van proceeding south on Woodyear. This was the first time that either Fabula or Phillips had seen anyone in the van. Continuing through the intersection and glancing over his right shoulder Fabula saw that a black male with white and grey hair was operating the van. Fabula made a U-turn and followed the van which had made a left-hand turn and was eastbound on Gold. Fabula decided to conduct a field interview in order to confirm the identity of the operator, but he neither turned on his flashing lights nor forced the van to stop. Suddenly the van pulled to the curb on Gold Street east of Carey.[5] By the time Fabula had stopped and approached the van on foot, the driver was already standing in the street beside an open driver's side door.

Fabula, who did not draw his side arm, identified himself and asked the driver for his license and registration. The driver matched the descriptions that Fabula had been given for John Herod, a.k.a. Crip, and Fabula "believed it to be the same person that was supposed to have been armed with a gun, transporting a large quantity of heroin and cocaine." The driver identified himself as John Herod.

Fabula briefly patted down Herod's front waistline. He did not find a weapon. Through the open van door Fabula observed a purple, Seagram's Crown Royal bag on the engine cover between the two front seats. Fearing that the bag might contain a gun, Fabula picked it up and squeezed it. He felt numerous plastic objects sliding around in it. After opening the cloth bag he found 110 glassine or plastic packets containing what was later confirmed to be cocaine. Fabula then searched the interior of the van and discovered a fully loaded .38 caliber revolver beneath the driver's seat. Following the search Fabula formally arrested Herod.

Herod asks us to suppress both the cocaine and revolver contending, *inter alia*, that Fabula lacked both probable

---

**5.** We shall assume, most favorably to Herod and without intimating any opinion on the matter, that the stop was in legal effect compelled by the police and was not voluntary on Herod's part.

cause and exigent circumstances to stop and search his van without a warrant. The State submits, *inter alia,* that Fabula had probable cause to believe that the van contained narcotics and a concealed weapon. Further, because the van was moveable and gives rise to a lesser expectation of privacy than does a residence, the search was valid under the exception to the warrant requirement known as the Carroll doctrine. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court of Special Appeals agreed with this contention and so do we.

■ Officer Fabula had probable cause to believe that the van contained CDS based on the information received from the female informant who was one of Herod's customers and whose reliability was confirmed by the police investigation. We reach this conclusion under both the totality of the circumstances approach, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and the *Aguilar–Spinelli* analysis. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[6]

In the instant case the female informant was able to relate a dozen specific facts concerning her and her sister's drug supplier: (1) black male; (2) in his 50's; (3) whitened grey hair; (4) approximately 5'7"; (5) 135 lbs.; (6) using the name "Crip"; (7) selling heroin and cocaine; (8) from the 1500 block of N. Woodyear; (9) owning a specific green Ford van; (10) in which he would routinely leave that block between 4:00 a.m. and 6:00 a.m.; (11) carrying large quantities of drugs; and (12) armed with a handgun. Fabula was able to independently corroborate the first ten of these twelve facts before stopping and searching the van.

---

**6.** The applicability of the *Gates*'s "totality of the circumstances" approach to warrantless searches is raised in *Malcolm v. State,* 70 Md.App. 426, 521 A.2d 796, *cert. granted,* 310 Md. 144, 527 A.2d 331 (1987).

First, Fabula had three separate encounters which linked the 1500 block of N. Woodyear to the sale of narcotics. The anonymous call in August 1984 reported the sale of drugs in that block. When Green was arrested for possession on March 7, he related that he had purchased the drugs at 1560 N. Woodyear. Then three hours before the stop of Herod, Fabula arrested Bennett coming from the 1500 block, for possession of cocaine. Second, both the 1984 caller and Green linked the sale of drugs to the operator of the green Ford van with Maryland tag RL 2630. Third, Fabula corroborated Herod's use of the alias, "Crip," through police records and Green. Fourth, the Department of Motor Vehicles' report, Green, and the 1984 caller confirmed that the van was operated by a man known as Crip. Fifth, Fabula corroborated the female informant's description of her dealer through Green and through his own observations prior to the stop. Sixth, while neither Fabula nor Phillips actually saw Herod's van leave the 1500 block of N. Woodyear between the hours of 4:00 a.m. and 6:00 a.m., every morning Phillips checked the van was there before those hours but gone by 6:00 a.m. Finally, through police records, Fabula confirmed that Crip had previously dealt in illegal drugs. Consequently, when Fabula observed a short, black man with whitened grey hair operating the green Ford van with Maryland tags, RL 2630, leaving the 1500 block of N. Woodyear at 4:35 a.m. on March 14, he had corroborated all of the information supplied by the female informant except for actually seeing narcotics and a handgun in the van.

The female informant's reliability rests on more than corroboration through the police investigation. Discussing the sufficiency of an affidavit supporting a warrant the Supreme Court has recognized that reliability is strengthened where information is offered against the informant's penal interest. *United States v. Harris*, 403 U.S 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), *see also Hubert v. State*, 638 P.2d 677 (Alaska Ct.App.1981) (statement implicating participation in burglary and drug offense). In *Harris* the Court found greater reliability because

the warrant's affidavit recited extrajudicial statements of a declarant, who feared for his life and safety if his identity was revealed.... These statements were against the informant's penal interest, for he thereby admitted major elements of an offense under the Internal Revenue Code. [*United States v. Harris, supra,* 403 U.S. at 583, 91 S.Ct. at 2082.]

In the instant case, the female informant also feared retaliation, showed scars from drug use and admitted to the purchase of drugs from Crip. These statements exposed her to potential prosecution under Md. Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.), Art. 27, § 286(a)(2). "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility ...." 403 U.S. at 583, 91 S.Ct. 2082.

Similarly, the informant's reliability is enhanced because she exposed herself to possible prosecution under Art. 27, § 150 which imposes criminal penalties for giving false statements to the police. Here the officers should have been able to identify her by sight. The Supreme Court accepted this principle in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) where, while speaking of the credibility of a known informant, the Court stated:

This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint.... [*Id.* at 146–47, 92 S.Ct. at 1923–24.]

Reliability here is further underscored by the fact that the informant disclosed her basis of knowledge through declarations that she had purchased drugs from Crip and evidenced her drug use by exhibiting her scars. She also explained her motive, namely that Crip was causing her sister to be addicted. In *Spinelli v. United States, supra,* the Court stated

it is especially important that ... the magistrate may know that he is relying on something more substantial

than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. [393 U.S. at 416, 89 S.Ct. at 589.]

In *Gates* the Court found that an informant's reliability was also strengthened by the accurate prediction of future activity reasoning that

[i]f the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities. [*Illinois v. Gates, supra*, 462 U.S. at 245, 103 S.Ct. at 2335 (footnote omitted).]

Here the informant was not only able to describe Herod, his vehicle, their location and his alias but also his pattern of travel at an unusual hour. The latter is a particularly strong indication that the informant's report was based on personal knowledge.

We hold that the information possessed by Fabula at 4:35 a.m. on March 14, 1985, made it likely that the female informant was correct so that the officer had probable cause to believe that Herod was transporting drugs in the van as well as a handgun to protect his inventory. Consequently, pursuant to *Carroll v. United States, supra*, Officer Fabula did not violate the fourth amendment by stopping the van, searching it and seizing the drugs and gun. *See also England v. State*, 274 Md. 264, 334 A.2d 98 (1975); *Mobley v. State*, 270 Md. 76, 310 A.2d 803 (1973); *Peal v. State*, 232 Md. 329, 193 A.2d 53 (1963); *Barrow v. State*, 59 Md.App. 169, 474 A.2d 967 (1984); *Gatling v. State*, 38 Md.App. 255, 380 A.2d 654 (1977), *cert. denied*, 282 Md. 732 (1978). This warrantless search constitutionally included the contents of the purple cloth bag. *See United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982) (the scope of a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," and not by the nature of the container).

■ Herod argues that because Officer Fabula in his own mind justified the stop as an "investigatory stop" and justified the search of the van and the contents of the purple bag as a protective search for weapons this Court is limited to that legal analysis in determining whether the search is constitutional. This contention is contrary to the holding in *Peters v. New York*, decided with *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917, 936–37 (1968). In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Court cited *Peters* for the proposition that an officer's subjective legal interpretation is not controlling. There the Court stated that "the fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying [the accused's] custody by proving probable cause and hence removing any barrier to relying on [the accused's] consent to search." *Id.* at 507, 103 S.Ct. at 1329.

■ Herod's remaining submission is that the stop and search were based on information "at least one week old" and that "[t]his was certainly a sufficient amount of time to obtain a warrant if probable cause had existed to support a warrant." This argument is very similar to that made in *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) where Justice Blackmun, writing for a plurality of four in the opinion announcing judgment, said:

Respondent contends that here ... probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances. Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. The exigency may arise at any time, and the fact that the

police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action. [*Id.* at 595–96, 94 S.Ct. at 2471–72 (citation and footnote omitted).]

It is unnecessary for us to decide whether probable cause existed prior to Officer Fabula's sighting of Herod on March 14 and, if so, precisely when the case reached that level. As is illustrated by Herod's argument that the police at all times lacked probable cause, that concept, turning as it does on the likelihood of the existence of one or another sets of facts, will frequently be open to argument throughout an investigation. Even if Phillips and Fabula, as early as March 7, had developed a case which the courts would hold presented probable cause, they did not violate the fourth amendment by continuing their investigation in order to build a better case. *See United States v. Whitfield*, 629 F.2d 136 (D.C.Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). The police had been told that a large quantity of drugs would be in the van when it moved from the 1500 block of N. Woodyear between 4:00 a.m. and 6:00 a.m. Having been unable to sight the van leaving the 1500 block prior to March 14, when the police finally saw someone driving the van in the early morning and seeing that the driver matched the description of Crip, Fabula had both probable cause and exigency for the stop and search. He was not required to obtain a warrant while Herod drove away with the drugs.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY JOHN HEROD.