550 A.2d 670

Jeffrey Wayne MALCOLM

v.

STATE of Maryland.

No. 68, Sept. Term, 1987.

Court of Appeals of Maryland.

Dec. 1, 1988.

Joseph A. Dugan (Dugan & McGann, P.A., on the brief), College Park, for appellant.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

█ The issue here is whether the federal and state constitutions prohibit a warrantless automobile search based on an informant's tip which has been extensively investigated by the police. We conclude that the federal and state constitutions do not bar such action where the tip

is credible under the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[1]

## I.

Officer Dennis R. Gibbins (Gibbins) of the Montgomery County Police Department received information that Ricky Lewis (Lewis) would be participating in the manufacture and distribution of PCP. The tip indicated that Lewis 1) lived in a redbrick apartment on Dalamar Street, 2) drove his girlfriend Vicky's bright yellow Mustang, which had molding missing from the left front door, 3) had traveled to Tennessee and obtained chemicals for a "cook of PCP," and 4) would have PCP ready for distribution on August 20, 1985. The informant, whose identity was known to the police but kept confidential at trial, had a criminal record and had not given any information to the police prior to this tip.

In corroborating this information, Gibbins went to Dalamar Street where he found a yellow Mustang with molding missing from the left front door. The car was registered to Victoria Whitman. Gibbins also learned that a previous tip to the police had identified Lewis as a PCP manufacturer, though the tip had not been acted upon. Moreover, Lewis' criminal history included a prior arrest and a felony conviction involving PCP sometime after 1980.

Gibbins observed Lewis in the company of Jeffrey Wayne Malcolm (Malcolm) and Richard Manco (Manco). The officer discovered that Malcolm had "a prior history of PCP

---

**1.** The issue has been an open one up to now. *Lee v. State,* 311 Md. 642, 654 & n. 6, 537 A.2d 235, 240 & n. 6 (1988) (assuming without deciding that *Gates* applied to warrantless searches); *Herod v. State,* 311 Md. 288, 295 n. 6, 534 A.2d 362, 365 n. 6 (1987) (noting that the issue is an undecided one). We have applied *Gates* to searches predicated on warrants. *See Winters v. State,* 301 Md. 214, 482 A.2d 886 (1984); *Potts v. State,* 300 Md. 567, 479 A.2d 1335 (1984). In other cases, we have simply mentioned *Gates* in passing. *See Chase v. State,* 309 Md. 224, 245, 522 A.2d 1348, 1358–59 (1987); *Valdez v. State,* 300 Md. 160, 170, 476 A.2d 1162, 1167 (1984).

manufacture in Howard and Prince George's County" and had a prior address in Tennessee. Manco had had several complaints filed against him relating to PCP distribution.

On the morning before the predicted drug distribution, Lewis and Malcolm left the Dalamar apartment with a blue vinyl suitcase and got into a pick-up truck owned by Malcolm's brother and bearing Virginia license plates. Gibbins and his partner Mancuso traced the suspects to a local motel that night. Mancuso observed them "looking around quite distinctively in the parking lot" before they entered the motel with several grocery bags. The motel phone records indicated that the suspects dialed a number which the police then believed belonged to Michael Sideman, a former defendant in a controlled substance case.

Gibbins later observed the suspects participating in what he described as counter-surveillance driving. In the first instance, the officer followed the suspects until they made a U-turn. In the second instance, the suspects sat through two or three cycles of a traffic light with no apparent mechanical trouble; they then drove in one direction—only to make a U-turn, drive into two shopping centers and then leave.[2]

---

2. On cross-examination, Gibbins answered questions in the following manner:

A. I have followed homicide suspects, robbery suspects....
Q. How do they drive? ....
A. They would make right-hand turns from center lanes. They would purposefully run through red lights. They would go two blocks, stop, make a U-turn, come back. They would pull off on a side street, stop, cut the headlights.
Q. Were these suspects that had committed a crime, that you were following?
A. These—both, pre-crime, and post-crime suspects.
Q. So then there is really no difference between the actions that somebody might take pre-crime, or post-crime?
A. Well, I think the determination is whether or not somebody is being followed....
Q. All right. I understand what you are saying, but there also is a very innocent reason for people driving like that. Somebody can make a right turn from the center lane because he is a bad driver, or he can go through a bad light, isn't that correct?

When Lewis and Malcolm left with the suitcase in the pick-up truck the next morning, the police searched the motel room and found no evidence of narcotics. Based on the informant's tip, the police corroboration of that tip, the countersurveillance driving of the suspects, their drug histories, their checking out of the motel, their driving a vehicle bearing out-of-state tags, the risk of losing the truck in the heavy morning traffic and the fact that the day for distribution had arrived, the police decided to stop the vehicle.[3] Surrounded by several officers, the suspects were removed at gun-point from the truck and patted down. The police then opened the back of the truck which began to emit a strong smell resembling benzine or ether. According to Gibbins' testimony, such a smell is indicative of PCP. The police discovered PCP-treated parsley in the suitcase and arrested Malcolm and Lewis.

Prior to trial, Malcolm moved to suppress the contents of the suitcase. In denying that motion, Judge Messitte reasoned that the police had probable cause to search the vehicle under the *Aguilar–Spinelli* test.[4] *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Malcolm was convicted of possession with intent to distribute a controlled dangerous substance and other related offenses. Judge Raker sentenced him to twenty years without parole pursuant to Maryland Code (1957, 1982 Repl. Vol., 1985 Cum.Supp.), Article 27, § 286(b)(2).

---

A. Because he is a bad driver?
Q. Yes.
A. I don't draw the same opinion that you do.

3. Officer Gibbins testified: "I didn't want to lose them. At that particular time, it was now the 20th of August. I knew that Mr. Lewis was to have a quantity of PCP.... I didn't want to lose him in traffic, and therefore I felt the stop justifiable."

4. The motion was also denied at trial, based on the prior ruling. *See* Md. Rule 4–252(g)(2).

In appealing his conviction, Malcolm argued that the police lacked probable cause under the *Aguilar–Spinelli* test and that, therefore, the improperly seized evidence should have been excluded at trial. Malcolm also challenged the validity of his sentence based on the allegedly vague language of section 286(b)(2). The Court of Special Appeals affirmed both Malcolm's conviction and his prison term. *Malcolm v. State,* 70 Md.App. 426, 521 A.2d 796 (1987).

Although we affirm Malcolm's conviction based on a totality of the circumstances test, we vacate his sentence and remand his case to the trial court for sentencing not inconsistent with this opinion.

## II.  The Warrant Requirement

Under the federal and state constitutions, the government is generally required to obtain a magistrate's warrant in order to conduct a valid search. *See* U.S. Const. amend. IV;[5] Md. Const. Declaration of Rights, art. 26.[6] However case law recognizes public policy exceptions to the warrant requirement, as in the case of automobile searches. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *see also Herod v. State,* 311 Md. 288, 534 A.2d 362 (1987); *England v. State,* 274 Md. 264, 334 A.2d 98 (1975); *Mobley v. State,* 270 Md. 76, 310 A.2d 803 (1973), *cert. denied sub nom., King v. Maryland,* 416 U.S. 975, 94

---

**5.**  The fourth amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . ." U.S. Const. amend. IV. This provision applies to the states through the fourteenth amendment. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *see also Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

**6.**  Article 26 provides:
> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Md. Const. art. 26.

S.Ct. 2003, 40 L.Ed.2d 564 (1974); *cf. Duncan v. State*, 281 Md. 247, 378 A.2d 1108 (1977) (discussing various exceptions to the warrant requirement in the context of automobiles). The rationale for permitting a warrantless automobile search in moments of exigency is that 1) the mobility of the vehicle creates a greater need to search without delay and 2) individuals have a lesser reasonable expectation of privacy in their cars as opposed to their homes.[7]

### III. The Test for Probable Cause

Under the fourth amendment and article 26,[8] the state must have probable cause in order to legally conduct a search of a private citizen, his dwelling or his possessions. Probable cause for a search is the "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see also Potts v. State*, 300 Md. 567, 575, 479 A.2d 1335, 1340 (1984).

In the past, the test for probable cause based on an informant's tip consisted of the two-pronged analysis first enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). There, the Supreme Court required that the police establish 1) the basis of the informant's knowledge and 2) the veracity of the tip, *i.e.* the credibility of the informant or the reliability of the informant's information. *Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514, 12

---

7. As we have previously noted, the police are "not required to obtain a warrant while [the suspect drives] away with the drugs." *Herod v. State*, 311 Md. 288, 300, 534 A.2d 362, 368 (1987). And the fact that the police may have been able to obtain a warrant at an earlier time in the investigation does not necessarily destroy the exigency of the situation and thus the validity of the search. *Id.* at 299–300, 534 A.2d at 367–68. "[The police do] not violate the fourth amendment by continuing their investigation in order to build a better case." *Id.* at 300, 534 A.2d at 368.

8. Article 26 is *in pari materia* with the fourth amendment. *Potts v. State*, 300 Md. 567, 576, 479 A.2d 1335, 1340 (1984); *see also Gahan v. State*, 290 Md. 310, 319, 430 A.2d 49, 54 (1981).

L.Ed.2d at 729.[9]

Through the guidelines of the two-pronged test, the Court sought to ensure that a magistrate would not merely serve as a rubber stamp for police conclusions as to probable cause; the Court reasoned that the judgment of a neutral and detached magistrate is more desirable than an " 'officer engaged in the often competitive enterprise of ferreting out crime.' " *Aguilar*, 378 U.S. at 113, 84 S.Ct. at 1513, 12 L.Ed.2d at 727 (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948)). So too, in the warrantless situation, the two-pronged test heavily restricted police from acting on unfounded rumor. However the structured nature of the two-pronged approach also undermined law enforcement by eliminating valid tips which could not meet one of the *Aguilar–Spinelli* prongs. The prongs' independent channelling of the veracity and basis of knowledge standards meant that a deficiency in one could not be made up through a surplus in the other.[10] Thus the Court abandoned the two-pronged test in favor of the "totality of the circumstances" approach. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721, 726 (1984) ("We did not merely refine the 'two-pronged test.' We rejected it....").

Although resting in part on the desire to promote the use of search warrants, *Gates* also emphasized the need to

---

**9.** The Court later emphasized that an affidavit must either indicate the manner in which the information was gathered or contain a tip which describes "the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 644 (1969).

**10.** *Gates*, 462 U.S. at 230 n. 5, 103 S.Ct. at 2328 n. 5, 76 L.Ed.2d at 543 n. 5 (The " 'dual requirements represented by the "two-pronged test" are "analytically severable" and an "overkill" on one prong will not carry over to make up for a deficit on the other prong.' ") (quoting *Stanley v. State*, 19 Md.App. 507, 530, 313 A.2d 847, 861 (1974)).

utilize valid informants' tips which do not fit the rigid requirements of the two-pronged approach. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 276 L.Ed.2d at 548 ("While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not."). The need for valid tips exists equally in the context of warrantless searches as in that of searches based on warrants.

We find that law enforcement needs in the area of warrantless searches are better forwarded through a balancing test, than through a needlessly rigid two-pronged approach. *See Potts v. State,* 300 Md. 567, 479 A.2d 1335 (1984) (applying *Gates* under the state and federal constitution to a search predicated on a warrant); *Brown v. State,* 57 Md.App. 186, 469 A.2d 865 (1984) (noting poor experience with the *Aguilar–Spinelli* test). Furthermore the consistency gained by extending the balancing test to warrantless situations comes at no cost to an individual's constitutional rights.

As the key protection from unreasonable government searches, warrants continue to be favored at law. First, a search based on a warrant need not be confined to special situations. Second, the defendant must overcome the presumption of regularity attending a search warrant. *See Massachusetts v. Upton,* 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721, 727 (1984) ("A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."); *Potts v. State,* 300 Md. 567, 575, 479 A.2d 1335, 1339 (1984) (noting that a magistrate's determination of probable cause should be accorded great judicial deference); *Valdez v. State,* 300 Md. 160, 169–70, 476 A.2d 1162, 1166–67 (1984) (noting that Maryland will not construe warrants in a hypertechnical manner, but instead give them the benefit of the doubt). Third, evidence obtained through good faith reliance on a warrant is not subject to the federal exclusionary rule. *United States v. Leon,* 468 U.S. 897, 104

S.Ct. 3405, 82 L.Ed.2d 677 (1984). Thus, the overall incentive to obtain a search warrant remains strong; the fact that an exigency may render a warrant unnecessary is simply no reason to mandate a more stringent probable cause standard than already exists for warrants.

■ We hold that a totality of the circumstances test applies to warrantless searches and seizures, just as it currently applies to searches based on a warrant. *See Potts v. State,* 300 Md. 567, 479 A.2d 1335 (1984) (applying *Gates* test under state and federal constitutions for a search based on a warrant). Our review of the precedent of other jurisdictions supports this view.[11]

---

**11.** Cases applying the *Gates* standard in warrantless situations include *United States v. Gonzalez,* 835 F.2d 449, 450–51 (2d Cir.1987) (applying *Gates* to warrantless arrest under the federal constitution); *United States v. Figueroa,* 818 F.2d 1020, 1023–25 (1st Cir.1987) (applying *Gates* to warrantless arrest under the federal constitution); *United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986) (applying *Gates* to warrantless search under the federal constitution); *United States v. Love,* 767 F.2d 1052, 1063 (4th Cir.1985) (applying *Gates* to warrantless arrest under the federal constitution), *cert. denied sub nom., Love v. United States,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); *United States v. Marin,* 761 F.2d 426, 431 (7th Cir.1985) (applying *Gates* to warrantless search under the federal constitution); *United States v. Cisneros–Mireles,* 739 F.2d 1000, 1002–03 (5th Cir.1984) (applying *Gates* to warrantless search under the federal constitution); *United States v. Reed,* 733 F.2d 492, 502 & n. 4 (8th Cir.1984) (applying *Gates* to warrantless arrest under the federal constitution); *United States v. Mendoza,* 722 F.2d 96, 100 n. 5 (5th Cir.1983) (applying *Gates* to warrantless search under the federal constitution); *State v. Espinosa–Gamez,* 139 Ariz. 415, 678 P.2d 1379 (1984) (applying *Gates* to warrantless search under federal constitution); *Jefferson v. United States,* 476 A.2d 685, 686 n. 1 (D.C.1984) (applying *Gates* to warrantless search under state and federal constitutions); *Love v. State,* 254 Ga. 697, 334 S.E.2d 173 (1985) (applying *Gates* to warrantless search under the federal constitution); *People v. Mitchell,* 123 Ill.App.3d 868, 79 Ill.Dec. 310, 463 N.E.2d 864 (1984) (applying *Gates* to warrantless arrest under federal constitution); *Whisman v. Commonwealth,* 667 S.W.2d 394, 397 (Ky.Ct.App.1984) (applying *Gates* to warrantless arrest under state and federal constitutions); *State v. Ruffin,* 448 So.2d 1274, 1278 (La.1984) (applying *Gates* to warrantless arrest under state and federal constitutions); *Eisenhauer v. State,* 754 S.W.2d 159 (Tex. Crim.App.1988) (applying *Gates* to state constitution), *cert. denied sub nom. Eisenhauer v. Texas,* —— U.S. ——, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *State v. Davis,* 35 Wash.App. 724, 669 P.2d 900, 902 n. 2

## IV.  Probable Cause

■  Based on the facts presented at the pretrial motion to suppress,[12] we conclude that the police had probable cause to conduct the automobile search.  One need only look to the facts of *Gates* to know this is so.

There, an anonymous informant notified the police that a certain couple would be trafficking drugs.  In addition to providing their name and Illinois address, the informant said the wife would drive to Florida on May 3, drop off the car to be filled with drugs and then fly back to Chicago.  The husband would fly to Florida to pick up the car and drive it to Chicago.  Police corroboration indicated that 1) the couple lived at a different address than the informant had given, 2) the husband flew to West Palm Beach on May 5, and 3) he *and* his wife started back for Chicago the next

---

(1983) (applying *Gates* to warrantless arrest under federal constitution), *cert. denied,* 100 Wash.2d 1039 (1984); *State v. Boggess,* 115 Wis.2d 443, 340 N.W.2d 516 (1983) (applying *Gates* to warrantless search under state and federal constitutions); *see generally* 1 W.R. LaFave, Search and Seizure, § 3.1(c), at 551 (2d ed. 1987) (noting likelihood of acceptance of *Gates*).

However not all courts have adopted the *Gates* standard for warrantless searches.  *State v. Kimbro,* 197 Conn. 219, 496 A.2d 498, 501 (1985) (rejecting *Gates* test for warrantless arrest and search under state constitution); *People v. Johnson,* 66 N.Y.2d 398, 488 N.E.2d 439, 444–45, 497 N.Y.S.2d 618, 623–24 (1985) (rejecting *Gates* test for warrantless searches under state constitution); *cf. State v. Jones,* 706 P.2d 317 (Alaska 1985) (rejecting *Gates* test for search based on a warrant under state constitution); *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985) (same); *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985) (same); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984) (same).

12.  "A pretrial ruling denying the motion to suppress is reviewable on ... appeal of a conviction."  Md. Rule 4–252(g)(2).  However such a review must be limited to the facts available to the judge at the time of his denial.  *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749, 755 (1987) ("The State suggests that at the trial on the merits ... the prosecutor fleshed out the proof of probable cause which he had skeletonized at the suppression hearing and established that the police officer did in fact have probable cause....  If so, this proof came too late, of course, to cure the deficiency at the pretrial hearing.").  Thus we consider only the evidence presented at the pretrial hearing before Judge Messitte.

day. *Gates*, 462 U.S. at 225–27, 103 S.Ct. at 2325–26, 76 L.Ed.2d at 540–41. This information was sufficient to obtain a valid search warrant for the couple's home and car. Yet the information was incorrect as to the couple's address and as to the activities of the wife.

By contrast, the informant in the instant case identified the initial suspect, the suspect's residence, the car used by the suspect, the owner of that car, and the drug connection with Tennessee. The tip checked out in every way. In corroborating the tip, the police also observed Malcolm's involvement with Lewis and Manco, countersurveillance activities on the part of the suspects, prior PCP histories for all, and a telephone call to a number believed to be that of another drug connected party. The quality of this tip and its corroboration exceeds that of *Gates*. Hence we may conclude probable cause existed here.

We emphasize several factors in reaching this conclusion. First, every aspect of the informant's detailed tip was corroborated prior to the search, with the obvious exception of the drug distribution. *See Potts v. State*, 300 Md. 567, 479 A.2d 1335 (1984) (upholding search warrant based on a reliable informant's tip and police corroboration similar to the instant case); *see also Herod v. State*, 311 Md. 288, 295–96, 534 A.2d 362, 365–66 (1987) (discussing corroboration of informant's tip); *Shrout v. State*, 238 Md. 170, 208 A.2d 585 (1965) (upholding search warrant based on tip of informant and police surveillance corroborating tip). For example, the informant indicated that Lewis would travel to Tennessee for a "cook of PCP." The police subsequently observed Lewis keeping company with Jeff Malcolm, who had a prior Tennessee address and a history of PCP involvement.

Second, the fact that the initial suspect, as well as the two men with whom he met, had prior involvement with the exact drug predicted for distribution is no small consideration. As we have previously noted, "[k]nowledge of prior convictions of the person observed is one of the elements to be considered in determining whether there is probable

cause." *Gatewood v. State,* 244 Md. 609, 616, 224 A.2d 677, 682 (1966) (relying on police expertise, observation of suspicious activity and knowledge of suspect's prior conviction to establish probable cause); *cf. Mills v. State,* 278 Md. 262, 363 A.2d 491 (1976) (upholding warrant based on police allegation of a crime, knowledge of the suspect's address, detailed description of the weapon and absence of weapon on suspect at time of arrest).

Third, the suspects engaged in what an officer with fifteen years on the force and six years in a surveillance team believed to be countersurveillance. We have long recognized the importance of police expertise. *Winters v. State,* 301 Md. 214, 228, 482 A.2d 886, 893 (1984) ("[The investigator's] interpretation of all this information led him to assert in the affidavit that there was probable cause ...; considerable credit can be given to the expertise of law enforcement officers."); *accord Henderson v. State,* 243 Md. 342, 344, 221 A.2d 76, 77 (1966); *Shrout v. State,* 238 Md. 170, 176, 208 A.2d 585, 589 (1965); *Dean v. State,* 205 Md. 274, 283–84, 107 A.2d 88, 92 (1954); *Bratburd v. State,* 193 Md. 352, 356, 66 A.2d 792, 794 (1949).

Fourth, the suspects checked out of their motel on the day of the drug distribution predicted by the informant.

We agree that the aforementioned factors do not establish the certainty that the suspects were participating in the distribution of PCP. However "probable cause does not demand the certainty associated with formal trials; it is sufficient that a 'fair probability' existed...." *Potts v. State,* 300 Md. 567, 575, 479 A.2d 1335, 1340 (1984). The officers here need only have had adequate reason to suspect the "probability of criminal activity." We conclude they did.

This conclusion is consistent with our own cases finding probable cause under the totality of circumstances test. *See Herod v. State,* 311 Md. 288, 534 A.2d 362 (1987) (where the informant 1) exposed herself to prosecution by giving the tip, 2) explained her motive for giving the tip, and 3)

gave information based on personal dealings with the defendant); *Winters v. State*, 301 Md. 214, 482 A.2d 886 (1984) (finding probable cause for a search warrant existed where the detailed tip of an informant had been corroborated by the police and the basis of the informant had been established); *Potts v. State*, 300 Md. 567, 479 A.2d 1335 (1984) (where the confidential informant 1) had proven reliable in the past, 2) gave detailed information and 3) was partially corroborated by police investigation).

In *Lee v. State*, 311 Md. 642, 537 A.2d 235 (1988), this Court found there was no probable cause based on an informant's tip under the *Gates* test at a particular point in police investigation. However that case is clearly distinguishable. In *Lee*, we emphasized 1) that the informant had relayed information which could have been obtained from the media and 2) that the police had had time to do only minimal corroborative work. By contrast, the tip here could not have been derived from the media and had in fact been extensively corroborated by the police.

### V. Sentence

■ Malcolm was sentenced to twenty years without parole based on Maryland Code (1957, 1982 Repl. Vol., 1985 Cum.Supp.), Article 27, § 286(b)(2). That section provided that anyone violating its provisions

> is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $20,000, or both. Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 10 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with Article 31B, § 11.

We agree with Malcolm's contention that this language is ambiguous with respect to whether the limitation of eligibility for parole applies only to the mandatory ten year sentence, or may be applied as well to any longer sentence that is imposed. In cases where, as here, a penal statute is

ambiguous, the provision should be construed in favor of the defendant. *State v. Canova,* 278 Md. 483, 496–97, 365 A.2d 988, 996 (1976); *Gatewood v. State,* 244 Md. 609, 617, 224 A.2d 677, 682 (1966); *see also Wynn v. State,* 313 Md. 533, 546 A.2d 465 (1988). Thus, we hold that *only* the first ten years of Malcolm's sentence was subject to the limitation of eligibility for parole.[13] We therefore vacate Malcolm's sentence and remand the case for resentencing.

JUDGMENT AFFIRMED, EXCEPT AS TO THE SENTENCE; SENTENCE VACATED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR RESENTENCING NOT INCONSISTENT WITH THIS OPINION. ONE HALF OF THE COSTS TO BE PAID BY EACH PARTY.

---

13. The statute was amended by Chapter 439 of the Laws of 1988, and now clearly reflects the interpretation we have given the earlier language.