551 A.2d 127

**Richard A. GREEN**

v.

**STATE of Maryland.**

No. 227, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 3, 1989.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before WILNER, GARRITY and ROBERT M. BELL, JJ.

GARRITY, Judge.

The appellant, Richard A. Green, charged with possession with intent to distribute heroin and cocaine, was tried in the Circuit Court for Baltimore City (Hammerman, J.) on a not guilty plea to an agreed statement of facts and convicted of both charges.[1] He was sentenced to serve two concurrent six-year terms of imprisonment. The appellant asserts that the trial court erred in denying his motion to suppress.

## Facts

Officer Fred Bealefeld of the Baltimore City Police Department testified that at about 6:00 p.m. on March 25, 1987, he received information from a "registered confidential informant."[2] The informant related that a young black

---

1. The evidence developed at the suppression hearing was adopted as the statement of facts.

2. The record does not reveal whether the informant was from within or without the criminal milieu. Officer Bealefeld merely testified that he had "received information from a registered confidential informant, who had contact with me for some time." The court determined a "registered" informant as being synonymous with that of a "reliable" informant and characterized a "registered" informant as "a steady informant, a regular informant of the police, one that they

male of medium complexion, wearing a red jacket over a black hood, blue jeans, and white tennis shoes, was sitting on the steps of a house in the 2300 block of Etting Street selling gelatin capsules filled with cocaine, which the individual was dispensing from his pocket. The informant further stated that he had observed the transaction "less than five minutes" before calling the police, and that the individual was located across from an area of the 2300 block of Etting Street where basketball was being played.

Officer Bealefeld, his partner, Officer Michael Caperoon, and Officer Glenn Williams immediately proceeded to Etting Street in plain clothes in an unmarked vehicle. Upon reaching the 2300 block of Etting Street, the officers observed the appellant, Richard A. Green, getting up from the front steps of a row house. Green's appearance match the description given by the informant. According to Officer Bealefeld, as Officers Williams and Caperoon exited the vehicle, Green "ran down the steps he was on, ran just a short distance, and went up some steps to the very next house, and was trying to get in the doorway." Green succeeded in gaining entrance to the house, in which he resided with his mother and sister, and went "a few steps into the actual first room." He was followed into the house by Officers Williams and Caperoon and apprehended.

The officers brought Green out of the house and onto the street. Upon conducting a search of his person, the police recovered from Green's left pants pocket a plastic bag containing numerous white gelatin capsules. A further search of Green by the officers resulted in the discovery of a glassine bag containing thirty white gelatin capsules, a bundle of twenty-five blue glassine bags containing a white powder substance, thirteen white glassine bags containing a white powder substance, and $69 in cash. Subsequent laboratory analysis determined that twenty-five of the gelatin capsules contained cocaine, and that the blue and white

---

have come to rely upon." There is nothing in the record, however, to indicate the basis for that determination.

glassine bags contained heroin. The trial court, based upon the totality of the circumstances, including the court's finding of "flight," denied Green's motion to suppress the evidence.

## Discussion

The appellant contends he was arrested without probable cause and, therefore, the fruit of the search conducted incident to his arrest should have been suppressed.[3]

The State counters by arguing that the police had probable cause to arrest the appellant on the basis of the information and circumstances known to the officers before they effectuated the arrest.

It is well established that an arrest is legal if made under the authority of a valid arrest warrant. *Hebron v. State*, 13 Md.App. 134, 145, 281 A.2d 547 (1971), *cert. denied*, 264 Md. 748 (1972). It is equally well established, however, that a warrantless arrest may also be legal under certain circumstances. *Id.* In Maryland, the circumstances under which a warrantless arrest may be made by a police officer are now spelled out by statute, although the statute's provisions are in part declaratory of the common law. Md.Ann. Code art. 27, § 594B (1957, 1987 Repl.Vol.); *Hebron*, 13 Md.App. at 145, 281 A.2d 547.

■ The legality of a warrantless arrest made pursuant to § 594B is measured by the existence of probable cause at the time of the arrest. *See Hebron*, 13 Md.App. at 145, 281 A.2d 547; *Evans v. State*, 11 Md.App. 451, 455, 274 A.2d 653, *cert. denied*, 262 Md. 746 (1971). We have observed in prior decisions that probable cause within the contemplation of the statute has the same meaning that it had under the common law. *See, e.g., Wescott v. State*, 11 Md.App. 305,

---

3. The appellant also argues on appeal that even if the police had probable cause to arrest, the officers were not, absent a warrant, justified in following him into his house to make the arrest. We will not address that issue because of our ruling with respect to the appellant's first contention.

306–307, 273 A.2d 824, *cert. denied,* 262 Md. 750 (1971); *Rife v. State,* 9 Md.App. 658, 663, 267 A.2d 326 (1970), *cert. denied,* 402 U.S. 998, 91 S.Ct. 2185, 29 L.Ed.2d 165 (1971). In this context, probable cause exists when the facts and circumstances within the knowledge of the arresting officer, or of which he has reasonably trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been or is being committed by the person arrested. *Stevenson v. State,* 43 Md.App. 120, 127–28, 403 A.2d 812 (1979), *aff'd.,* 287 Md. 504, 413 A.2d 1340 (1980); *Thompson v. State,* 15 Md.App. 335, 341, 290 A.2d 565, *cert. denied,* 266 Md. 743 (1972).

It is beyond dispute that information furnished to a law enforcement officer by an informant, together with the officer's personal knowledge, may serve as the basis of probable cause for a warrantless arrest and search incident to that arrest if the trial court is informed "with specificity what the inform[ant] actually said, and why the officer thought the information was credible, and the court is satisfied such information was sufficiently reliable and reasonably trustworthy to give the officer, as a prudent man, probable cause to believe that the accused had committed or was committing, a felony." *Hundley v. State,* 3 Md.App. 402, 405, 239 A.2d 593 (1968), *cert. denied,* 251 Md. 750 (1968). *See also Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Mullaney v. State,* 5 Md.App. 248, 246 A.2d 291 (1968), *cert. denied,* 252 Md. 732 (1969).

The benchmark case with regard to warrantless arrests made on the basis of an informant's tip is *Draper v. United States, supra. See Malcolm v. State,* 70 Md.App. 426, 436 n. 1, 521 A.2d 796 (1987), *aff'd,* 314 Md. 221, 550 A.2d 670 (1988). In *Draper,* a federal narcotics agent was told by an informant, whose information the agent had always found to be accurate and reliable, that Draper, whom the agent did not know, but who was described by the informant, was dealing in narcotics, had gone to Chicago to obtain a supply, and would return on a certain train on a certain day or the

day after. The agent met the train, easily recognized Draper from the informant's description, and arrested him without a warrant. The Court held that the arrest was lawful, the combination of a reliable informant and verification by observation of all details of the information except the actual possession of narcotics establishing probable cause.

Also helpful to our analysis of the present case is the decision in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh'g. denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). In *Gates,* the Court held that a tip received in the form of an anonymous letter, which the police were able to verify as to various details, furnished probable cause for the issuance of an arrest warrant.[4] The tip detailed future activities of the suspects that were highly suspicious in nature. As the identity of the informant was unknown, however, his credibility could not be vouched for, but the ability of the police to verify details of the tip as to future activities of the suspects gave some degree of credibility to the information and, thus, to the informant. Of particular significance to the Court was the fact that the verified information included details that would ordinarily be known only to someone familiar with the suspects and their plans and activities. Knowledge of such verified details, the Court opined, gave rise to a reasonable inference that the informant had access to reliable information about the suspects' illegal activities. Thus, the Court concluded that the nature of the verifiable details furnished by the informant, involving suspicious behavior that the informant was able to predict in advance, furnished a reasonable basis to believe that the informant was credible and had a reliable source of information.

---

**4.** Although *Illinois v. Gates* is distinguishable from the present case in that it involved the issuance of an arrest warrant, the Gates "totality of circumstances" test applies to all occasions when probable cause must be assessed. *Malcolm v. State, supra.*

Our recent decision in *Millwood v. State,* 72 Md.App. 82, 527 A.2d 803, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988), is indicative of the quality and type of verifiable information an informant must give to supply the lesser degree of reliability needed in a stop and frisk situation under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[5] In particular, we highlight the pertinency of the following discussion from *Millwood:*

[W]e turn now to an examination of the anonymous tip in the case *sub judice.* The caller informed the state police that methamphetamines were being transported in Pennsylvania along Interstate 81 by a white male wearing an "Indiana Jones" style hat and a white female, both occupying an automobile of a specific year, make, model and color with Pennsylvania tags. If that had been the extent of the tip given by the informant, it might well be questionable whether confirmation of that information would have justified even an investigatory stop. A mere description of the Thunderbird and its occupants could have been provided by any mischief maker who merely happened to observe the distinctive automobile as it traveled southward along Interstate 81. What sets this anonymous caller apart from the public at large, and what provides a reasonable basis for suspecting that his allegation of criminal activity may be true, is that he correctly informed the police that the Thunderbird would continue along Interstate 81 and cross over into Maryland in one to two hours. Considering that the automobile was carrying Pennsylvania tags, it is highly unlikely that one not intimately familiar with the car and its occupants—a

---

5. Millwood specifically involved the type of information needed to justify an investigatory stop by police. The case is helpful to our present analysis because investigatory stops and warrantless arrests require the police to adduce analogous types of information. *See United States v. McBride,* 801 F.2d 1045, 1047 (8th Cir.1986) wherein the Court observed that a Terry stop may be founded on some lesser degree of reliability than would be required to establish probable cause to support an arrest.

mere casual observer—could have foretold the entry of the Thunderbird into Maryland one to two hours beforehand. Confirmation of that prediction, along with the later confirmation of substantially all of the other information provided by the informant, provided an articulable reasonable basis to suspect that the informant's tip was true and thus to stop the Thunderbird and question its occupants. (footnote omitted).

*Id.*, 72 Md.App. at 93–94, 527 A.2d 803.

■ With the foregoing principles in mind, we turn now to an examination of the information known to the police prior to the arrest in the case *sub judice*.[6] The police received information from a confidential informant that a young black male with a medium complexion, wearing a red jacket over a black hood, blue jeans, and white tennis shoes, was sitting on the front steps of a house in the 2300 block of Etting Street selling gelatin capsules filled with cocaine, which the individual was dispensing from his pocket. The informant further stated that the individual was located across from an area of the block where basketball was played.

The police were able to verify the "innocent" details related by the informant upon their arrival at the 2300 block of Etting Street. Despite the verification of such innocuous details as the description of the appellant's clothing and the location of where he was sitting, we point out that the information could have been provided by any "mischief maker" who happened to observe the appellant sitting on the steps of a house in the 2300 block of Etting Street. In particular, we note that the verifiable details provided by the informant did not predict future activities of the appellant. We believe, therefore, that the mere verification by

---

6. Whether the police officers intended to arrest the appellant when they stopped their vehicle in front of the house is not clear from the record. What is certain, however, is that the appellant was arrested when the officers restrained him inside the house. *See McChan v. State*, 238 Md. 149, 157, 207 A.2d 632 (1965), *cert. denied*, 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966).

the police of the description of the appellant's clothing and the location of where he was sitting failed to serve as sufficient corroboration to establish reliability or probable cause. As previously related, Officer Bealefeld testified that he had "received information from a registered confidential informant, who had contact with me for some time." Whatever connotation was ascribed by the police to the word "registered" we may only speculate. There is nothing in the record to indicate the basis for determining the informant's reputation for veracity and reliability.

Although *Illinois v. Gates, supra,* adopted a "totality of the circumstances" analysis for assessing the existence of probable cause, an informant's veracity, reliability and status remain highly relevant in determining whether probable cause has been established where the police rely upon an informant's tip. In this regard, we recognize that *Gates* substituted its looser approach for the earlier and more rigorous "two-pronged test" of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Gates,* however, has not rendered *Aguilar* and *Spinelli* impotent. As Judge Moylan, writing for this court, said in *Trussell v. State,* 67 Md.App. 23, 29, 506 A.2d 255 (1986), "[*Aguilar* and *Spinelli*] have simply been reduced from 'constitutionally binding' stature to 'helpful guidelines' stature."

In considering *Aguilar's* "veracity prong" we observed in *Trussell* that "[a] big distinction in that regard was whether [the informant] was from the criminal milieu, and therefore inherently suspect, or was a citizen-informant, whose very status militated toward a finding of trustworthiness." In *King and Mobley v. State,* 16 Md.App. 546, 298 A.2d 446 (1973), we discussed the inherent credibility of the citizen-informant, as contrasted with the more suspect police "stool pigeon":

It was made clear in *Dawson v. State,* 14 Md.App. 18, 33–34, 284 A.2d 861, that the strictures of *Aguilar v.*

*Texas,* 378 U.S. 108 [84 S.Ct. 1509], and *Spinelli v.
United States,* 393 U.S. 410 [89 S.Ct. 584], "are aimed
primarily at unnamed police 'informers' rather than at
that broad class of secondary sources who are the victims
of crime, the disinterested witnesses of crime, other disin-
terested civilian sources of information or other law en-
forcement officers. The members of this broad class are
generally, but not universally, named. They are not from
the criminal milieu." *Dawson,* [14 Md.App.] p. 33 [284
A.2d 861].

*Id.* at 554–555, 298 A.2d 446.

The evidence further established that when the police
officers, who were in plain clothes, arrived on the scene and
alighted from their unmarked vehicle, the appellant ran into
his house and was apprehended by the pursuing officers.
An individual's flight usually plays a key role in focusing an
officer's attention on a particular suspect. In *Peters v. New
York,* 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917
(1968), the Supreme Court stated that deliberately furtive
actions and flight at the nearing of police are strong indicia
of *mens rea.* While there are a minimal number of cases
which hold that flight, without more, is sufficient to autho-
rize an investigative stop, *see, e.g., People v. Waits,* 196
Colo. 35, 580 P.2d 391 (1978) (abrupt evasive maneuver upon
confronting police car alone), the vast majority of decisions
indicate disagreement with that proposition. As observed
by Judge Digges on behalf of the Court in *Watkins v.
State,* 288 Md. 597, 420 A.2d 270 (1980):

> These latter rulings accord great weight to a suspect's
> flight from police, but require that this conduct be corrob-
> orated by other suspicious circumstances before finding
> that there were reasonable grounds for the stop. (cita-
> tions omitted) ... [W]e agree with the majority of courts
> that view the unequivocal flight of a suspect upon seeing
> police as not alone necessarily indicative of criminal activ-

ity....[7]

*Id.* at 603–604, 420 A.2d 270.

Under the totality of the circumstances of this case, wherein there was absolutely no testimony establishing the reliability or character status of the "registered" informant who merely "had contact with [Officer Bealefeld] for some time," or the corroboration of any meaningful detail, we do not believe the appellant's conduct of running into his house was sufficient to establish probable cause for his arrest.

Because the arrest of the appellant was conducted without probable cause, it was unlawful. Accordingly, the search of him incident thereto and the seizure of property obtained by the search were unreasonable and, likewise, unlawful. *See Wescott v. State,* 11 Md.App. at 316, 273 A.2d 824. We hold, therefore, that the trial court erred in denying appellant's motion to suppress the evidence.

JUDGMENTS REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

7. Upon reviewing the record and determining that there were corroborative circumstances sufficient to create the reasonable suspicion necessary to stop Watkins, the Court affirmed the conviction.