569 A.2d 712

**Darnell JACKSON**

v.

**STATE of Maryland.**

**No. 845, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 8, 1990.

688

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before GARRITY and ALPERT, JJ., and RICHARD M. POLLITT, Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

Darnell Jackson, appellant, was convicted in the Circuit Court for Baltimore City of possession of cocaine with intent to distribute. He was sentenced to ten years imprisonment, with all but six months suspended, and five years probation.

Appellant asks this court to consider whether the trial court erred in denying the motion to suppress the evidence seized in the search of appellant's car. We hold that the lower court acted properly in denying appellant's motion and affirm the judgment.

According to the testimony of the State witnesses, the information leading to the search of appellant's car was provided to the police by a registered police informant known as ED 167. The State witnesses testified to the following facts. On May 26, 1988, the informant called Baltimore City Police, identified himself as ED 167, and said that there was a two-tone Nissan Maxima automobile parked in the 1700 block of Barnes Street, and that a man was selling drugs "out of the trunk" of the car. The informant advised police that the "persons would come up to that person, give that person money, engage in conversation and then there would be an exchange of drugs which would come from the trunk of that car which ED 167 described." He further advised police that he had personally observed this activity and that it was occurring presently.

Officers Bochniak, Schoff, and Marucci responded immediately and arrived in approximately ten minutes in an unmarked car. Upon their arrival, police observed a two-tone Nissan Maxima with several men, including appellant, gathered around it. The men, with the exception of appellant, dispersed when the unmarked police car arrived. The police vehicle was "very well known" in that area, and the sight of it always caused drug buyers to "immediately get out of the area." Appellant remained. He was waxing the roof of the Maxima.

When the officers approached appellant and identified themselves, appellant admitted to being the owner of the Maxima. Officer Schoff saw, in the open trunk, a folder with "a piece of aluminum foil approximately three inches long" protruding from it. Officer Schoff, who had been accepted as an expert witness, testified that aluminum foil is "commonly used" to "package" illegal drugs. Seeing the foil, Officer Schoff opened the folder, and then opened the foil, and discovered a plastic baggy containing 36 zip-lock baggies containing a white powder, which he suspected was cocaine. Appellant was arrested. A further search of the car revealed a "Crown Royal bag" containing currency.

Ten days before appellant's arrest, the person who became ED 167 had first contacted the police and expressed a desire to become an informant. He admitted to being a current user of cocaine, marijuana, and occasionally heroin. A police background check indicated that he had a prior conviction for burglary. After filling out the necessary forms, ED 167 was accepted as a registered informant. It was agreed that he would be paid in cash for information leading to arrests.

The informant's "track record," over the preceding ten days, included information verified by police surveillance: (1) on May 16, that a described male, walking southbound in the 800 block of Broadway, possessed a large quantity of "pink top" vials of cocaine (one arrest); (2) hours later on May 16, that a man with the last name "Cherry," wearing certain clothes, would be leaving a house in the 800 block of

Broadway, and approach people to sell cocaine to them (three arrests); and (3) on May 20, that a named cocaine dealer, at a certain address, was operating in the 900 block of Broadway (three arrests). Eventually, a total of 20 persons, all of whom were involved in the selling of "pink top vials of cocaine," were arrested, due to the information provided by the informant, and verified by surveillance, on May 16 and 20, 1988.

Appellant asserts that the court erred in failing to grant his motion to suppress evidence because the informant was untrustworthy, the informant did not demonstrate the basis of his knowledge, and the details of the tip were insufficient to give police probable cause to search appellant's car. We disagree. We hold that the trial judge properly denied the motion to suppress.

Under the U.S. Const. amend. IV and Md. Const. Declaration of Rights, Art. 26, the State must have probable cause in order to conduct legally a search of a private citizen, his dwelling or his possessions. Probable cause for a search is the "fair probability that contraband or evidence of a crime will be found in a particular place." *Malcolm v. State*, 314 Md. 221, 227, 550 A.2d 670 (1988).

In the past, the test for probable cause based on an informant's tip consisted of the two-pronged analysis first enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). There, the Supreme Court required that the police establish (1) the basis of the informant's knowledge, and (2) the veracity of the tip, *i.e.*, the credibility of the informant or the reliability of the informant's information. *Malcolm, supra*, 314 Md. at 227, 550 A.2d 670. The structured nature of the two-pronged test undermined law enforcement by eliminating valid tips which could not meet one of the two prongs. *Id.* at 228, 550 A.2d 670. Thus, in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Supreme Court abandoned the strict two-pronged test in favor of the "totality of circumstances" approach. In *Malcolm, supra*, the Court of Appeals ruled that the *Gates'* "totality of the circumstances

test" for determining probable cause was equally applicable to warrantless searches and seizures.

■ Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

In *Green v. State*, 77 Md.App. 477, 481, 551 A.2d 127 (1989), this court stated:

It is beyond dispute that information furnished to a law enforcement officer by an informant, together with the officer's personal knowledge, may serve as the basis of probable cause for a warrantless arrest and search incident to that arrest if the trial court is informed with specificity what the inform[ant] actually said, and why the officer thought the information was credible, and the court is satisfied such information was sufficiently reliable and reasonably trustworthy to give the officer, as a prudent man, probable cause to believe that the accused had committed or was committing, a felony.

■ In *Green, supra*, we held that the trial court erred in denying appellant's motion to suppress the evidence. In so doing, we established that information received from a registered informant is insufficient to establish probable cause where there is a failure to show the reliability or character status of the informant or corroborate any meaningful details. Here, we conclude that evidence of a registered informant's reliability, demonstrated by prior accurate information in conjunction with a tip that is detailed enough to provide a reasonable assurance of being based on firsthand observation and that is corroborated by police, is sufficient to establish probable cause. The trial court made certain valid findings in support of its denial of the motion to suppress. It found initially that the informant was reliable, based on his prior accurate information to the

police. The trial court based this finding on evidence that this was the eighth supply of information in the previous ten days leading to arrests for controlled dangerous substances, all within a very close area.

The court also found that the informant personally observed the information he related in this case and thus he had a sufficient basis of knowledge. The court stated that it was appropriate for the police officer to conclude that if the informant said he saw it, then he in fact did see it, based on the informant's past reliability.

We further note that the tip was detailed enough to provide a reasonable assurance that the informant was speaking from firsthand observation. *See Stanley v. State,* 19 Md.App. 507, 535, 313 A.2d 847 (1974). The informant's tip directed the police to a specific car in a specific location and specified that the drugs were being sold out of the trunk of the car.

We also emphasize other factors in reaching our conclusion that probable cause existed under the totality of the circumstances test. The officers corroborated details that supported the informant's tip: the car was located where predicted and surrounded by men; the trunk was open; and the tin foil was observed in the trunk where the drugs were supposedly stored. As the officer testified, tin foil is a common packaging material for illegal drugs. *See Malcolm, supra,* 314 Md. at 232, 550 A.2d 670. The fact that the men left as soon as the police arrived, which was consistent with the actions of drug buyers in the area, is also significant. *Id.* at 233, 550 A.2d 670 (police expertise in evaluating otherwise innocent activity). The area itself, which was known as a high drug area, further supports the determination that probable cause existed. *See Grant v. State,* 55 Md.App. 1, 21, 461 A.2d 524 (1983).

We realize that the aforementioned facts and circumstances do not establish with certainty that the suspect was participating in illegal drug transactions. Probable cause, however, does not demand the certainty associated with

formal trials; it is sufficient that a fair probability existed. *Malcolm, supra.* Thus, under the totality of the circumstances, the police had probable cause to search appellant's car.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.