584 A.2d 1279

**Michael Anthony ALLEN**

**v.**

**STATE of Maryland.**

**No. 1879, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Jan. 30, 1991.

658

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Former Public Defender, on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and CATHELL, JJ.

GARRITY, Judge.

The appellant, Michael Anthony Allen, was convicted in the Circuit Court for Baltimore City (Arabian J.) of unlawfully wearing or carrying a handgun in violation of Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 36B. Having failed to persuade the trial court to suppress evidence seized from him, Allen presents the following question for our consideration:

Did the trial court, in light of the Supreme Court's holding in *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412 [110 L.Ed.2d 301] (1990), properly deny appellant's motion to suppress after the court found the challenged evidence was seized pursuant to information furnished by an anonymous source who accurately stated appellant

was armed with a gun and described his appearance and whereabouts?

## FACTS

At approximately 2:51 p.m. on October 5, 1989, Sergeant Michael Harding, a nineteen year veteran of the Baltimore City Police Department, received a radio transmission that an anonymous person had reported that a black male, who was wearing a gray jacket, beige coat, and blue jeans, was at the corner of Biddle and Homewood Streets and armed with a gun. Another Baltimore City Police Officer, Michael Dunn, who was also cruising in the area, confirmed the description given in the anonymous caller's report. Officer Dunn testified that within the last four years that particular area, specifically Homewood and Biddle, has been the source of numerous complaints about drugs and the site of many shootings, at least eight of which had resulted in homicides.

When Officer Harding arrived at the Homewood and Biddle area, about four minutes after having received the call, a helicopter unit on the scene directed his attention to a man wearing a grey jacket and blue jeans. Officer Harding determined that the man did not have a gun, although he was intoxicated and had a wine or liquor bottle concealed in his coat.[1] While Officer Harding was returning to his car, he noticed the appellant, who was about seventy-five feet away, walking northbound on Homewood, away from the intersection. When Harding spotted the appellant, he immediately advised the other police units in the area that he had "a guy matching the description of the person with the gun. He is on Homewood. He is turning westbound on Mura Street." Officer Harding testified that he observed the appellant to be wearing a gray hooded sweatshirt under

---

1. Officer Harding testified that he had observed several individuals sitting in a grassy area near the intersection of Homewood and Biddle; however none of them matched the description given by the anonymous caller.

a beige jacket, which was either tan-suede or leather, and blue jeans.

Officer Dunn, a sixteen-year veteran of the Baltimore City police, was driving north on Homewood when he received Harding's report. Turning left into the westbound lane of Mura Street, Dunn identified the appellant as "fitting the description" in the anonymous caller's report.[2] Remaining in his police car, Dunn followed Allen a short distance on Mura and stopped approximately five or six feet behind Allen. Dunn then alighted from the car, and ordered Allen to stop and put his hands on the wall. Allen made no unusual movements and immediately complied.

Asked to relate his intention when approaching the appellant, Officer Dunn stated:

> My intention was not to arrest him at that point, it was a mere stop and frisk.
>
> \* \* \* \* \* \*
>
> At this point, it was for safety reasons for myself and for the other officer responding, to see if the person did have a gun. Since he fit the description, there was reasonable belief that he was possibly armed.
>
> \* \* \* \* \* \*
>
> At that time I approached him, kept my right hand on my gun, since I had the holster unsnapped, put my left foot in between his foot and with my left hand I reached around him and patted his outer clothing in the front area of his waistband.

Finding nothing in this area, which Dunn described as a place commonly used for carrying a gun due to its being "easily reached and accessible," Dunn took the following action:

> After I placed my hand in the front of the waistband area, I simply moved my hand in one motion around and

---

**2.** Officer Dunn testified that the appellant was wearing a "gray hoodie sticking above the collar, sticking above the beige coat, with blue jeans."

when I got to his back, on the left side I felt a hard object, felt like a pistol grip and at that point there I drew my gun out of my holster, stuck it to his head and told him "Don't move."

Dunn then recovered the gun and arrested Allen.

Allen's motion to suppress the evidence obtained from the stop and frisk was denied on the ground that the anonymous tip furnished the police with reasonable articulable suspicion to justify a *Terry* stop. Allen's Fourth Amendment challenge contends that the quality and quantity of information provided by the anonymous caller was not sufficiently reliable to furnish the police with reasonable articulable suspicion for the stop and frisk.

## I.

### Investigatory Stop

■ In *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), the Supreme Court established "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." To pass constitutional muster, a stop of this nature must be founded upon "specific articulable facts" which would lead a reasonable police officer at the inception of the stop to conclude that a brief detention of the individual is appropriate. *Id.* at 21–22, 88 S.Ct. at 1879–80. The Supreme Court has delineated the general contours of the quality and quantity of evidence required to show reasonable articulable suspicion by way of contrast to that required to show probable cause:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause but also in the sense that reason-

able suspicion can arise from information that is *less reliable* than that required to show probable cause.

*Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added).[3]

■ We now turn to the issue of whether the anonymous caller's tip justified a *Terry* stop or was so "completely lacking in indicia of reliability [that it] would either warrant no police response or require further investigation before a forceable stop of a suspect would be authorized." *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). In reviewing the trial court's determination, our role is to ensure that the trial court had a substantial basis for concluding that articulable suspicion existed. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). We hold that the trial court did not err in finding that Officer Dunn had reasonable, articulable suspicion for making an investigatory *Terry* stop.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court was confronted with an anonymous telephone tip in the probable cause context. Although the Court emphasized the relevance of the informant's veracity, reliability, and basis for knowledge, the Court held that the challenged police conduct must be viewed in light of the "totality of circumstances." *Id.* at 230–31, 103 S.Ct. at 2328–29. In applying the totality of circumstances test to an investigatory stop in *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 2414–17, 110 L.Ed.2d 301 (1990), the Court confirmed what we previously had determined in *Millwood v. State*, 72 Md.App. 82, 87–94, 527 A.2d 803, *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988), that is, "that an anonymous tip may

---

**3.** The level of suspicion necessary to show reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1885, 104 L.Ed.2d 1 (1989); *see also Quince v. State*, 319 Md. 430, 433–34, 572 A.2d 1086 (1990) (collecting cases).

furnish reasonable articulable suspicion for an investigatory stop under *Terry.*"

In *White,* an anonymous person telephoned the police and related that Vanessa White would be leaving an apartment at a certain time in a particular vehicle and that she would have cocaine in her possession. The officers verified the description of the vehicle and observed White, empty-handed, leaving an apartment. After they stopped the vehicle en route to the destination the caller predicted, the officers conducted a consensual search and discovered marijuana in an attache case in White's vehicle. After arresting her, they found cocaine in White's purse. Reversing the judgment of the court below, the Supreme Court concluded that "the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion...." *White,* 110 S.Ct. at 2416. Holding that, under the totality of the circumstances, an anonymous tip may be sufficient indicia of reliability to justify an investigatory stop, the Court reasoned that the information provided by the tipster was reliable because the "significant aspects of the caller's predictions were verified" before the stop was made. *White,* 110 S.Ct. at 2417. In tailoring the totality of circumstances test to the investigatory stop situation, the Court stated, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if it were more reliable." *Id.* at 2416. The Court noted, however, that the information, as corroborated, was adequate for an investigatory stop, although it would not have been sufficient for an arrest or full search. *Id.*

 Absent sufficient corroboration, an investigatory stop based upon an anonymous tip raises the prospect of unjustifiable governmental intrusion into an individual's life by expanding the *Terry* exception to the probable cause requirement of the Fourth Amendment. Cautioning against such abuse, the Court in *Adams v. Williams,* 407 U.S. at 143, 92 S.Ct. at 1921, observed that "[o]ne simple rule will not cover every situation." In other words, the

facts and circumstances of each case must be carefully evaluated when determining the existence of reasonable suspicion. With this in mind, we now turn to the case *sub judice.*

Initially, Officers Harding and Dunn were told to respond to a complaint that there was a particularly described man who was armed with a gun at the corner of Homewood and Biddle streets. When asked what his intentions were at the point when he stopped Allen, Officer Dunn testified,

> [t]he fact that he fit the description to the tee gave me enough suspicion and knowing the area from working in the area for three and a half years, with the number of drug arrests, the shootings and homicides that are drug-related, with my knowledge of the area and him fitting the description, gave me the belief that he could have been armed.

■ The appellant contends that Officer Dunn lacked reasonable suspicion because the tip provided by the anonymous informant was not sufficiently reliable. It is now well-established that an anonymous informant's reliability can be confirmed in two ways, both of which demonstrate the informant's first-hand knowledge which bolsters the inference that he is reporting accurate information. First, the information provided may contain self-verifying details. Self-verifying details are demonstrated either by the richness of the information provided in the description, or by the accuracy with which the tip predicts the suspect's future behavior. *See Alabama v. White,* 110 S.Ct. at 2417 (anonymous tip carried sufficient indicia of reliability by accurately predicting future behavior); *Jackson v. State,* 81 Md.App. 687, 693, 569 A.2d 712 (1990) (anonymous tip sufficiently detailed to provide assurance that informant was speaking from firsthand observation); *Lee v. State,* 311 Md. 642, 655, 537 A.2d 235 (1988) (details provided in anonymous tip more specific than publicly reported facts). Secondly, an anonymous informant's tip has sufficient indicia of reliability if a police officer personally corroborates

the tip with his own observations. *See Jackson*, 81 Md. App. at 693, 569 A.2d 712 (officer observed significant number of details stated in tip).

Confronted with facts very similar to those of the instant case in *Quince v. State*, 319 Md. 430, 435, 572 A.2d 1086 (1990), the stop and frisk of a man who was said to be carrying a gun was upheld by the Court of Appeals. Although the police in that case knew that the complaint had been made by the manager of the Towson State University dining hall, they apparently knew nothing more about that source. 319 Md. at 434–35, 572 A.2d 1086. Regarding information supplied, the police were able to verify that the person they ultimately stopped and frisked matched the description provided by the complainant, was in the location described by the complainant, and was in the company of a woman who was generally described by the complainant. *Id.* at 435, 572 A.2d 1086. In this respect, the basis for the stop and frisk of Quince, who reportedly was armed, was not significantly different than the basis for the stop and frisk of the appellant. Indeed, as observed in *Quince*, "[t]he need for urgent action was apparent. A report of a man with a gun is a serious matter." 319 Md. at 435, 572 A.2d 1086.

In the instant case, the tip provided an accurate description of the suspect's appearance and precise location, and the details were immediately verified by the police. When Officer Dunn arrived at the intersection of Homewood and Biddle, he immediately corroborated the description furnished by the caller. Because the appellant fit the description of a suspect who was said to be armed, the trial court had a substantial basis for concluding that Officer Dunn had reasonable articulable suspicion that the appellant was armed. Although not dispositive in and of itself, the fact that the Homewood and Biddle area was well known to the officers as notorious for its drug activities, shootings, and homicides is a factor that may be considered

in the totality of circumstances.[4] *Timms v. State*, 83 Md. App. 12, 22–23, 573 A.2d 397 (1990). *See also Jackson*, 81 Md.App. at 693, 569 A.2d 712 (citing *Malcolm v. State*, 314 Md. 221, 233, 550 A.2d 670 (1988)). Finally, the specificity of the information in the caller's tip, discussed *supra*, distinguishes the instant case from *State v. Lemmon*, 318 Md. 365, 379, 568 A.2d 48 (1990), where the anonymous tip merely alleged "something was occurring" and contained no allegations as to how, or by whom, it was to have occurred. Moreover, because the caller stated that Allen was armed, the instant case is unlike the situation in *Jones v. State*, 319 Md. 279, 572 A.2d 169 (1990), where the police officer observed only innocent acts and had no knowledge of future, on-going, or past crimes occurring in the area.[5]

■ As a final matter, the appellant contends that Officer Dunn did not have reasonable articulable suspicion for the stop because the officer did not observe that the appellant was carrying a gun until he had frisked the appellant. Given that the gun the appellant was carrying was concealed, this contention completely lacks merit. Requiring a police officer to see a gun *prior* to frisking a person who he already has reasonable articulable suspicion to believe is armed and dangerous eviscerates the reasoning in the *Terry* opinion by raising the quantum of evidence necessary for an investigatory stop from reasonable articulable suspicion to probable cause. *Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882–83. Although in the matter *sub judice* the stop and

---

4. Here, we wish to emphasize that a police officer's experience is only one of many factors to be considered under the totality of circumstances. Although an officer's experience in a particular locality undoubtedly has bearing on his motive for the stop, we reiterate that "simple good faith on the part of the arresting officer is not enough ..." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 (citations omitted).

5. While the information provided by the informant in the instant case is very similar to the information provided by an unverified "registered informant" in *Green v. State*, 77 Md.App. 477, 551 A.2d 127, *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989), the facts in *Green* were measured against a probable cause standard rather than reasonable suspicion.

frisk was motivated by an anonymous caller, our holding today merely reaffirms the rationale of the *Terry* opinion. As the Supreme Court stated in that case:

> When an officer is justified in believing that the individual he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881.

## II.

### *Article 27, Section 36D*

As an alternative to his Fourth Amendment complaint, Allen contends that the seizure of the handgun was prohibited by Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 36D. Allen asserts that the gun discovered by Officer Dunn was not admissible into evidence because Officer Dunn neither requested Allen's name and address, nor asked questions which would have been calculated to determine whether Allen was licensed to carry a gun. The argument is specious. Section 36D provides in pertinent part:

> (a) Any law enforcement officer who, in the light of his observations, information, and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a handgun in violation of § 36B of this article, (ii) by virtue of his possession of a handgun, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a handgun, such officer *may*

> (1) Approach the person and identify himself as a law enforcement officer;

(2) Request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) Ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a handgun in violation of § 36B; and, if the person does not give an explanation which dispels the reasonable belief which he had, he may

(4) Conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a handgun. The law enforcement officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner, and sex of the person approached.

(b) In the event that the officer discovers the person to be wearing, carrying, or transporting a handgun, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the handgun pursuant to § 36B(c) of this article. If the person is unable to produce such evidence, the officer may then seize the handgun and arrest the person.

(c) Nothing in this section shall be construed to limit the right of any law enforcement officer to make any other type of search, seizure, and arrest which may be permitted by law, and the provisions hereof shall be in addition to and not in substitution of or limited by the provisions of § 594B of this article.

Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 36D.

The State has conceded that Officer Dunn did not comply with the provisions of §§ 36D(a)(1), (2), and (3). We must determine the consequences of noncompliance in light of the Fourth Amendment.

The clear purpose of § 36D is to allow a police officer to conduct a limited search for unlicensed concealed handguns under a standard of reasonable suspicion, rather

than a standard of probable cause. In enacting § 36D, the Legislature adopted the interpretation given to the Fourth Amendment by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the Court enunciated an articulable suspicion exception to the probable cause requirement of the Fourth Amendment.

The dialogue surrounding the passage of § 36D illuminates the relationship between § 36D and the Fourth Amendment as contemplated by the Legislature. The Attorney General indicated in his opinion letter concerning the constitutionality of § 36D that the police procedures contained in the statute are coextensive with the *Terry* exception to the probable cause requirement of the Fourth Amendment:

> The language of Section 36D obviously parallels the language of the Supreme Court in *Terry* very closely. Of course, as the above quoted portion of the opinion makes clear, each "stop and frisk" case will have to be judged on its own facts and ultimately must be decided in accordance with the dictates of the Fourth Amendment as applied to the States through the Fourteenth Amendment.
>
> \* \* \* \* \* \*
>
> Thus, each case will continue to be judged on its facts against the Fourth Amendment standards which the proposed bill mirrors. However, the ultimate articulation of these standards rests with the courts and much may yet be said.
>
> \* \* \* \* \* \*

*Opinion Letter of the Attorney General*, Feb. 22, 1972 (available in bill file for S.B. 205). *See also*, 52 Op.Att'y Gen., 502 (1972). Indeed, the language of § 36D codified the *Terry* holding where the Court stated:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in

the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85.

■ Bearing in mind that the Legislature intended police procedure permissible under § 36D to be coextensive with the Fourth Amendment requirements, we now address the appellant's contention that evidence which had been obtained in compliance with the Fourth Amendment, but not in compliance with §§ 36D(a)(1), (2), and (3), should be excluded at trial.

Because reasonable suspicion is a less demanding standard than probable cause, searches and seizures based upon this diminished standard pose the prospect of unjustifiable governmental intrusion into an individual's sphere of privacy. In responding to this concern, the Legislature grafted the cautionary language from the *Terry* holding onto § 36D. Thus, sections 36D(a)(1), (2), and (3) require a police officer to:

(1) Approach the person and identify himself as a law enforcement officer;

(2) Request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) Ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a handgun in violation of § 36B; and, if the person does not give an explanation which dispels the reasonable belief which he had, he may. . . .

■ These sections set forth a particular procedure for a police officer to follow when stopping and searching an

individual suspected of carrying a handgun. Mere noncompliance with these provisions has no Fourth Amendment significance. Cf. *Jordan v. State,* 72 Md.App. 528, 541–42, 531 A.2d 1028 (1987).

At this point we pause to restate the nature of the case before us. Officer Dunn had reasonable suspicion to stop the appellant as well as reasonable suspicion to believe that the appellant was armed and dangerous. Although the officer failed to comply with the procedure mandated by §§ 36D(a)(1), (2), and (3), his noncompliance has no Fourth Amendment significance because the stop and frisk was supported by reasonable articulable suspicion.

The Legislature did not provide for an exclusionary sanction for violations of the procedures specified in the statute. Absent legislative authority for exclusion of evidence, the Constitution alone serves as the basis for suppression of evidence. *In re Special Investigation No. 228,* 54 Md.App. 149, 157–64, 458 A.2d 820 (exclusionary rule applies to matters of Constitutional dimension).

In light of our determination that mere noncompliance with §§ 36D(a)(1), (2), and (3) does not rise to the stature of a constitutional violation, we hold that a police officer's failure to comply with these provisions does not require suppression of evidence, so long as the search and seizure is otherwise permissible under the Fourth Amendment.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.